## WESTERN UNION TELEGRAPH COMPANY *v.* CHILES.

### ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 168. Argued April 20, 1909.—Decided May 24, 1909.

Where plaintiff in error, defendant below, in a suit for penalty under a state law asks and the court refuses an instruction that if the jury find that the default occurred within a navy yard, over which the United States had exclusive jurisdiction, the recovery could not be had under the state law, this court has jurisdiction to review the judgment.

The Norfolk Navy Yard is one of the places over which, under Art. I, § 8, par. 17 of the Constitution, Congress possesses exclusive power of legislation, and that exclusive power necessarily includes exclusive jurisdiction; and it is of the highest importance that the jurisdiction of the State should be resisted at the border of such places. *Fort Leavenworth R. R. Co.* v. *Lowe,* 114 U. S. 525.

The State cannot inflict a penalty for the non-delivery of a telegram within the limits of a place under the exclusive jurisdiction of the United States; and so *held* that under the statute of Virginia in that regard the penalty cannot be collected for the non-delivery of a tele-

gram to an addressee within the limits of the Norfolk Navy Yard. Congress alone can prescribe penalties in such a case.

107 Virginia, 60, reversed.

THE facts are stated in the opinion.

*Mr Francis Raymond Stark*, with whom *Mr. George H. Fearons, Mr. Robert M. Hughes* and *Mr. Rush Taggart* were on the brief, for plaintiff in error.

*Mr W. D. Stoakley* for defendant in error, by special leave.

MR. JUSTICE MOODY delivered the opinion of the court.

The defendant in error, a gunner in the Navy, was stationed on board the U. S. S. Abarenda, which was lying at the Norfolk Navy Yard. A telegram addressed to him aboard the ship was received for transmission at Richmond, Va., thence transmitted, so far as appears with due dispatch, to Portsmouth, Va., which adjoins the Norfolk Navy Yard, and is the place to which telegrams directed to the navy yard are commonly sent. The message was never received by the defendant in error. He brought this action in the Court of Hustings of the city of Portsmouth against the plaintiff in error, the telegraph company, to recover a penalty imposed by the laws of Virginia. The Virginia Code, 1904, pp. 696, 697, after providing for a penalty for failure duly to transmit a message, contains the following provision:

"(6)     *     *     *     *     *     *     *

"It shall be the duty of every telegraph company, upon the arrival of a dispatch or message at the point to which it is to be transmitted, to cause the same to be forwarded by a messenger to the person to whom the same is addressed or his agent, and upon the payment of any charges due on this dispatch or message to deliver it; provided, such person or agent reside within the city or incorporated town in which such station is, or that at such point the regulations of the company require such delivery.

"It shall also be the duty of such company to forward a dispatch or message promptly, as directed, where the same is to be forwarded. For every failure to deliver or forward a dispatch or message as promptly as practicable the company shall forfeit one hundred dollars to the person sending a dispatch or message or the person to whom it was addressed."

The plaintiff's declaration contained two counts; the first for failure to transmit the telegram in conformity with the law of Virginia, and the second for failure to deliver it in accordance with the part of the law just quoted. As there was no proof in support of the first count, and it was apparently not submitted to the jury at the trial, it may pass out of view.

The second count, after alleging the receipt of the message at the point of origin, and its transmission, and receipt at the office at Portsmouth, avers that it was the duty of the telegraph company to deliver it to the plaintiff on the U. S. S. Abarenda at the navy yard as promptly as practicable, and that the defendant failed to perform its duty in that regard, wherefore it became indebted to the plaintiff for the amount of the statutory penalty. There was a demurrer to the declaration, and one of the reasons alleged was "that the place at which the message was to be delivered was on board a Government vessel, at a yard which is under the jurisdiction and control of the United States, and neither the State nor this honorable court has jurisdiction to impose any penalty for failure to deliver a message at such place." The demurrer was overruled, and the case was tried before a jury. There was testimony in behalf of the defendant that seasonably after the message was received at Portsmouth it was entrusted to a messenger boy for delivery to the plaintiff on board the ship; that it was taken to the gangway of the ship, and there, in accordance with the practice in such cases, delivered to the man on duty at that place, who receipted for it. With the weight of this testimony we have no concern. It also appeared that the message never reached the plaintiff. The defendant requested the presiding Judge to instruct the jury, in substance,

that if the default in delivery occurred within the limits of the territory of the Norfolk Navy Yard, plaintiff could not recover by virtue of the Virginia law, which had no authority within those limits. The court declined, under exception, to give this instruction, and the jury returned a verdict for the plaintiff for the amount of the penalty. There was judgment for the plaintiff, which, upon writ of error duly raising the questions which have been stated, was affirmed by the Supreme Court of Appeals of the State. Thereupon a writ of error from this court was allowed.

Part of the land composing the Norfolk Navy Yard, formerly known as the Gosport Navy Yard, was once owned by the State of Virginia. Title to the remainder of it was acquired by the United States by purchase from the owners. Title to the land owned by the State was acquired by the United States under the provisions of an act of Assembly, passed January 25, 1800, which authorized the Governor of the Commonwealth to convey by deed the title to the State land and "all the jurisdiction which this Commonwealth possesses over the public lands commonly called and known by the name of Gosport," reserving only the right of the officers of the State to execute process within the jurisdiction authorized to be ceded. The files of the Department of the Navy contain a deed of Governor James Monroe, dated June 15, 1801, executing in precise conformity with the act the authority which it conferred. The United States had purchased from the owners other land for the purpose of extending the navy yard. That purchase was recognized by the State of Virginia by an act of Assembly, passed February 27, 1833, and the Governor of the Commonwealth was authorized to cede the same jurisdiction, with the same reservation. The files of the Department of the Navy contain also a deed by Governor Littleton W. Tazewell, dated April 1, 1835, fully executing the provisions of the last-named act.

The case does not call for the consideration of the effect of a contract made within the State of Virginia for the seasonable

transmission and delivery of a telegram. The record presents the single question, whether a law of the State of Virginia imposing a penalty has any effect or operation within the limits of the navy yard. This question, if not fully raised by the demurrer, was distinctly raised by the request for instructions, which was refused. On one aspect of the evidence it might have been found that the only default of the defendant was entirely within the limits of the navy yard, and the defendant was entitled to an appropriate instruction on the issue thus raised. By the refusal to give the instruction requested the jury in effect was permitted to find for the plaintiff, even if the default was entirely within the navy yard. We think this was clearly erroneous. By the terms of the Constitution, Congress is given the power "to exercise exclusive legislation in all cases whatsoever . . . over all places, purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock yards and other needful buildings." Article I, § 8, par. 17, of the Constitution.

It is apparent from the history of the establishment of the Norfolk Navy Yard, already given, that it is one of the places where the Congress possesses exclusive legislative power. It follows that the laws of the State of Virginia, with the exception referred to in the acts of Assembly, cannot be allowed any operation or effect within the limits of the yard. The exclusive power of legislation necessarily includes the exclusive jurisdiction. The subject is so fully discussed by Mr. Justice Field, delivering the opinion of the court in *Fort Leavenworth R. R. Co. v. Lowe,* 114 U. S. 525, that we need do no more than refer to that case and the cases cited in the opinion. It is of the highest public importance that the jurisdiction of the State should be resisted at the borders of those places where the power of exclusive legislation is vested in the Congress by the Constitution. Congress already, with the design that the places under the exclusive jurisdiction of the United States shall not be freed from the restraints of the law, has enacted for them

(Revised Statutes, LXX, chapter 3) an extensive criminal code ending with the provision (§ 5391) that where an offense is not specially provided for by any law of the United States, it shall be prosecuted in the courts of the United States and receive the same punishment prescribed by the laws of the State in which the place is situated for like offenses committed within its jurisdiction. We do not mean to suggest that the statute before us creates a crime in the technical sense. If it is desirable that penalties should be inflicted for a default in the delivery of a telegram occurring within the jurisdiction of the United States, Congress only has the power to establish them.

*Judgment reversed.*