# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## WESTERN UNION TELEGRAPH CO. V. WHITE.

### March 14, 1912.

1. TELEGRAPH COMPANIES—*Interstate Messages—Failure to Transmit and Deliver—Penalty Imposed by State.*—If a telegraphic message from one point in this State to another point in this State be treated as an interstate message, because, according to the regulations of the company, it has to be relayed through the city of Washington, D. C., though it could be sent direct, the penalty imposed by the statute of this State for failure to transmit and deliver the message may be recovered in this State, although the negligence occurred in the city of Washington, since the statute may be fully carried out and obeyed without, in any manner, affecting the conduct of the company with regard to the performance of its duties in other States. It would not unfavorably affect or embarrass it in the course of its employment, and hence, until Congress speaks on the subject, the statute is valid.

2. APPEAL AND ERROR—*Constitutionality of Statute—Former Decisions— Jurisdiction—Dismissal.*—Where the only ground of jurisdiction of this court is the constitutionality of a statute, the validity of which has been established by former decisions of this court, the writ of error will be dismissed for want of jurisdiction.

Error to a judgment of the Corporation Court of the city of Fredericksburg in an action of debt. Judgment for the plaintiff. Defendant assigns error.

*Writ Dismissed.*

The opinion states the case.

*St. George R. Fitzhugh, A. L. Holladay, Rush Taggart, George H. Fearons,* and *Francis R. Stark,* for the plaintiff in error.

*W. W. Burtzner,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action to recover the statutory penalty of $100 provided by clause five, section 1294–h of Virginia Code 1904, for failure by the Western Union Telegraph Company to transmit to Fredericksburg a prepaid message accepted for transmission at that company's office at Staunton.

It appears that the message was promptly transmitted from Staunton to the company's relay office in the city of Washington, District of Columbia, received at that office, but never transmitted to the Fredericksburg office.

The question involved in this case is substantially the same as that involved and decided in the cases of *Western Union Telegraph Company* v. *Reynolds*, 100 Va. 459, 41 S. E. 856, 93 Am. St. Rep. 971, and the same company against *Hughes*, 104 Va. 240, 51 S. E. 225. Since those cases were decided there has been no decision of the Supreme Court of the United States (the court of last resort upon the question involved) upon the precise question at issue in this case, nor is there anything in the cases decided by that court since that time which seems to militate against the conclusion reached in the Reynolds and Hughes cases.

In *Western Union Telegraph Company* v. *Commercial Milling Company*, decided in November, 1910, and reported in 218 U. S. 406, 54 L. Ed. 1088, 31 Sup. Ct. 59, a telegram was accepted at the company's office at Detroit, Michigan, to be delivered at Kansas City, Missouri. The message, which was an acceptance of an offer to sell wheat, was promptly transmitted to the company's relay office in Chicago, Illinois. What became of it afterward is not shown, but it was never delivered. An action for damages for failure to deliver the message in Kansas City was brought in the State of Michigan, and upon appeal the validity of a statute of that State was upheld as not being in conflict with the commerce clause of the Constitution of the United States. That statute is as follows:

"Sec. 1. The people of the State of Michigan enact that it shall be the duty of all telegraph companies incorporated either within or without this State, doing business within this State, to receive dispatches from and for other telegraph companies' lines and from and for any individual, and on payment of the usual charges for individuals for transmitting dispatches, as estalibshed by the

rules and regulations of such telegraph company, to transmit the same with impartiality and good faith. Such telegraph companies shall be liable for any mistakes, errors, or delays in the transmission or delivery or for the non-delivery of any repeated or non-repeated message, in damages to the amount which such person or persons may sustain by reason of the mistakes, errors, or delays in the transmission or delivery, due to the negligence of such company, or for the non-delivery of any such dispatch, due to the negligence of such telegraph company or its agents, to be recovered with the costs of suit by the person or persons sustaining such damage."

In that case, in discussing the difference between the *Pendleton case,* 122 U. S. 347, 30 L. Ed. 1187, 7 Sup. Ct. 1126, and the *James case,* 162 U. S. 650, 40 L. Ed. 1105, 16 Sup. Ct. 934, Mr. Justice McKenna said, at pages 419–20 (of 218 U. S.): "A statute of Georgia which required telegraph companies having wires wholly or partly within the State to receive dispatches, transmit, and deliver them with due diligence, under the penalty of $100, was sustained as a valid exercise of the power of the State in relation to messages by telegraph from points outside of and directed to some point within the State. It will be observed that this case in some particulars exhibits a contrast to *W. U. Tel. Co.* v. *Pendleton, supra,* and yet they are entirely reconcilable, having a common principle. In the latter case the law passed on clearly transcended the power of the State, because it directly regulated interstate commerce, as we have already shown. In the *James case* the power of the State was exercised in aid of commerce. In the latter case prior cases were reviewed, and the principle determining the validity of the respective statutes was declared to be whether they could be 'fully carried out and obeyed without in any manner affecting the conduct of the company with regard to the performance of its duties in other States.' It was said that a statute of that kind, as it would not 'unfavorably affect or embarrass' the telegraph company in the course of its employment, should be held valid 'until Congress speaks upon the subject.' And it was observed that 'it is a duty of a telegraph company which receives a message for transmission, directed to an individual at one of its stations, to deliver that message

to whom it is addressed with reasonable diligence and n good faith. That is a part of its contract, implied by taking the message and receiving payment therefor.' And there can be liability to the sender of the message as well as to him who is to receive it. The telegraph company, in the case at bar, surely owed the obligation to the milling company to not only transmit the message, but to deliver it."

It will be observed in the above quotation it is said that "the principle determining the validity of the respective statutes was declared to be whether they could be 'fully carried out and obeyed without in any manner affecting the conduct of the company with regard to the performance of its duties in other States.'" Applying the principle or rule laid down in that case for the determination of the validity of our statute to the facts of this case, its validity would seem clear. The statute imposed no additional duty upon the telegraph company in requiring it to transmit the message to the office of the sender. It was the clear duty of the company to do this independent of the statute.

Treating the message in question as interstate, since its regular course from Staunton to Fredericksburg, in accordance with the regulations of the company, was through the District of Columbia, though the message could have been transmitted from Staunton to Fredericksburg over the company's lines entirely within this State, the statute affects the transmission of interstate commerce. But, as was said in the *James case, supra,* 162, U. S. 660, 40 L. Ed. 1105, 16 Sup. Ct. 938, "such transmission is not completed until the message is delivered to the person to whom it is addressed, or reasonable diligence employed to deliver it. But the statute can be fully carried out and obeyed without in any manner affecting the conduct of the company with regard to the performance of its duties in other States. It would not unfavorably affect or embarrass it in the course of its employment, and hence, until Congress speaks upon the subject, it would seem that such a statute must be valid."

What is said in that case as to the Georgia statute is equally true of our statute. It contains no requirement, as did the Indiana statute, involved in the *Pendleton case, supra,* which could in any manner affect the conduct of the company with regard to

the performance of its duty in another jurisdiction. *W. U. Tel. Co.* v. *Crovo*, 220 U. S. 364, 55 L. Ed. 498, 31 Sup. Ct. Rep. 399, 400.

The fact that the failure to transmit the message to Fredericksburg was the result of negligence at the company's relay office in Washington city furnishes no better reason for holding that the company is not liable to the penalty for failing to transmit than did the fact that the negligence which caused the message not to be delivered in the *Milling Company case, supra,* was in a State other than the State of Michigan, whose statute was involved, and where suit was brought for the violation of the statute.

It is not sought in this case to give effect to our statute outside of the limits of this State, as was held could not be done in the *Chiles case,* 214 U. S. 274, 53 L. Ed. 994, 29 Sup. Ct. 613; but the object of the suit is to give effect to the statute and to impose the penalty for the company's failure to transmit the message to Fredericksburg. If the message had never been transmitted at all from Staunton, it is clear, under the case of *Western Union Telegraph Co.* v. *Crovo*, 220 U. S. 364, 55 L. Ed. 498, 31 Sup. Ct. 399, the company would have been liable. If the point of delivery had been in Washington city, and the message had been duly transmitted to that place and never delivered, then there could be no recovery, as decided in the *Chiles case, supra.* If the message had been duly relayed and transmitted from Washington city to Fredericksburg, and the only default had occurred there in failing to deliver the message to the sendee, it is clear that an action would lie to recover the penalty, under the decision in the *James case.* Why, then, since there was default in the failure to transmit the message from one point in this State to another point in the State, should the statute not be enforced and the penalty imposed, for it was as clearly the duty of the company to transmit the message *to Fredericksburg* as it was to transmit the message *from Staunton?* The fact that the company was negligent in Washington city in receiving or transmitting the message ought not to protect it from the penalty for its default in failing to transmit the message to Fredericksburg.

We are of opinion that this case is controlled by the *Reynolds* and *Hughes cases, supra.* This court will, therefore, adhere to

its former decisions, and dismiss the writ of error for want of jurisdiction.

*Writ Dismissed.*

KEITH, P., and CARDWELL, J., dissent.

### ON PETITION TO REHEAR.

The petition to rehear alleges that the effect of the decision in this case, rendered at a former day of the term, is to overrule the case of *Western Union Telegraph Company* v. *Powell*, 94 Va. 268, 26 S. E. 828, upon one point, and asks that before any such result is reached it should be permitted to be heard upon that question.

It was not the intention of the court in deciding this case to overrule the Powell case, though there is language used in the opinion which might fairly warrant the petitioner's contention. The language of the opinion has been so changed as to make it clear that the court did not intend to overrule the decision in that case, and the petition to rehear is denied.

*Rehearing Denied.*